COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and Haley
Argued at Chesapeake, Virginia


DIANA RUTH MERGET GALLOWAY
                                                            OPINION BY
v.          Record No. 0468-05-1                   JUDGE ROBERT P. FRANK
                                                         NOVEMBER 29, 2005
DAVID WILLIAM GALLOWAY


FROM THE CIRCUIT COURT OF MATHEWS COUNTY
William H. Shaw III, Judge

Glenn R. Croshaw (Robert L. "Bo" Foley; Willcox & Savage, P.C.,
on briefs), for appellant.

E. Thomas Cox for appellee.


Diana Ruth Merget Galloway, appellant/wife, appeals the judgment of the trial court

reversing the commissioner in chancery's ruling that the parties' property settlement agreement

is unconscionable.  For the reasons that follow, we affirm.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).

The parties were married June 1, 1984, and separated on October 1, 2001.  There were no

children born or adopted of this marriage.

At marriage, husband worked in civil service at Fort Eustis.  After leaving that position in

1988, husband started his own business, Cassenvey Heating, Air Conditioning and Refrigeration,

Ltd.  From its inception, husband was, and continued to be, the sole stockholder and president of

this business.  For the first five years, husband worked alone.

At marriage, wife was employed as a nurse's aide at Eastern State Hospital where she had worked since approximately January of 1973. She retired from Eastern State Hospital July 31, 1993 after nine years of marriage to husband. At that time, she began working at Cassenvey Heating, Air Conditioning and Refrigeration, Ltd. as a secretary. Within a few months, wife began installing heating and air conditioning in the field. Wife worked for husband continuously from 1993 until six months before the April 20, 2004 commissioner's hearing.

During their eleven years employed together, both parties worked to expand the business, with its gross receipts for 2002 reaching over $1,000,000. This figure was twice that of the gross receipts for 2001. At the time of the commissioner's hearing, husband drew $900 per week from the business.

In February of 1984 and prior to the June 1, 1984 marriage, husband purchased and titled in his own name the marital home property located on a 3.5-acre tract. As a wedding present, wife gave husband a contiguous parcel containing .9 acre.[1] The record is silent as to the value of this property at the time of the commissioner's hearing. Husband purchased a third contiguous 2-acre parcel sometime in 1994 or 1995. After the parties separated, husband sold the 2-acre parcel for $80,000, netting $18,000.[2]

Since the business and the marital property were located on the 3.5-acre parcel, husband had the business and real property appraised as a unit in 2003 for a total of $200,000. Husband testified that if he sold the business and the home, he would ask between $200,000 and $250,000. The appraisal included shop tools and equipment worth $60,000. Additionally, the business

---

[1] The record also refers to this parcel as .65 acre.

[2] While the record does not disclose the exact date of the sale, the property settlement agreement dated September 28, 2004 mentions this parcel as the husband's property.

owned three vehicles valued at $15,000, had accounts receivable between $2,000 and $7,000, and a business checking account of approximately $1,000.

The balance due on the loan for the house and business was $87,000 at the time of the commissioner's hearing. The fair market value of the residence at the time of separation was $60,000.

In 2000, wife's father died and she inherited his debt-free residence valued at $275,000, along with $30,000 in cash.

At the end of September 2001, husband brought to wife a property settlement agreement prepared by his attorney that granted him all of the interest in the marital residence and the business. Wife would receive a 1999 GMC Chevy pickup truck, valued at the time of settlement at $11,000. Each party waived spousal support and any interest in the other party's pension accounts. Each party received some personal property but the record does not disclose any value. Husband also agreed to pay wife $400 per week as an employee of the business "for as long as the parties are husband and wife" and to pay her hospitalization while she was so employed.

Prior to having the agreement drafted, husband and wife had discussed the terms of the agreement. Husband brought the agreement to wife's apartment the night before it was executed. Husband testified, "[S]he knew the agreement was coming." After reading the agreement, and prior to signing it, wife proposed no changes.[3] Husband told wife, "[H]ere it is, look at it, and if you want to go with it, sign it." Husband also told wife she could get a lawyer, but wife declined to do so.

_____

[3] After the agreement was executed, wife suggested a change but then withdrew her suggestion.

Husband characterized the agreement as "what we both wanted."  Husband testified wife knew the value of the business and home parcel was around $200,000.

The following day, husband drove wife to a bank to execute the agreement.  The notary public at the bank testified wife did not appear to be under stress or duress, nor did she appear to be worried.  The agreement was executed on September 29, 2001.

At the commissioner's hearing, wife testified she had read the entire agreement and denied being forced to sign it.  She indicated she voluntarily went to the bank with husband.  She further testified she could easily obtain a job as a secretary.  Wife testified husband, on one occasion, told her if she did not sign the agreement, he would take her to court.  Nevertheless, she explained the reason why she signed the agreement, saying, "[I]f this is what he wants, I'm going to go ahead and sign it.  That's the reason I signed it.  Like a fool, I should have had a lawyer."

The commissioner in chancery found the property settlement agreement was unconscionable, ruling that a "gross disparity" existed between the value of the property each party would receive.  The commissioner concluded:

> The husband never discussed his retirement at Fort Eustis with the wife although it doesn't appear that the amount that the husband would receive from his retirement is significant.  The husband never advised the wife as to the value of the business or of the real property including the marital residence.  Apparently there were no negotiations between the parties; the wife simply signed the document prepared by the husband's attorney.
>
> The only income that the wife receives is $400.00 per week from her employment at Cassenvey Heating and Air Conditioning "for so long as the parties are husband and wife."  The wife waived spousal support and will be without any apparent income upon the entry of a final decree of divorce.
>
> The wife does appear to have some marketable skills since she has previously worked in an office and as an installer for Cassenvey Heating and Air Conditioning.  Her age is certainly a factor as to what type of employment she could maintain or even obtain.  To

waive spousal support after 17 years of marriage without apparent means to support oneself together with the gross disparity in the value of the property received by the parties creates a set of circumstances which becomes inequitable, unfair and causes enforcement of the agreement to be unconscionable.

Husband filed exceptions to the commissioner's finding of unconscionability. The trial court sustained husband's objections, finding the property settlement agreement was not unconscionable. The trial court opined:

> Even accepting the commissioner's findings of the value of assigned properties, there are no accompanying circumstances indicative of bad faith or inequity under the law. There is no evidence that Husband concealed or misrepresented his financial status or coerced Wife, nor that Wife suffered from any disability or necessity. Given the status of their marriage, there was no fiduciary relationship between the parties. Each acted at arm's length. Those factors noted in Derby [v. Derby, 8 Va. App. 19, 378 S.E.2d 74 (1989),] which would support unconscionability are not present here. At worst, Wife made a bad bargain, but she read the agreement and had the opportunity, as she indicated in the agreement, to consult with an attorney about it, and chose not to. She has not shown by "clear and convincing evidence" that the terms of the agreement are unconscionable.
>
> The Commissioner apparently concluded that Wife's waiver of spousal support constituted the inequitable circumstances, apart from gross disparity, in satisfaction of the standard in Derby. Assuming that Wife was entitled to support (by no means determined by the evidence), her waiver is nevertheless a factor in determining the values exchanged. It does not provide separate evidence in this case of such circumstances of inequity that would render the agreement unconscionable. In other words, her waiver may increase the disparity, but the remaining circumstances do not justify a conclusion of unconscionability, however inadvisable her decision may have been.
>
> Accordingly, the Court will enter an order concluding that the agreement is valid and enforceable.

This appeal follows.

ANALYSIS

While appellant has offered seven assignments of error, all can be distilled into one issue of whether the trial court erred in finding the property settlement agreement was not unconscionable.

Both parties agree that Derby v. Derby, 8 Va. App. 19, 378 S.E.2d 74 (1989), sets forth the basis for analyzing this issue:

> If inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify equitable relief. [Smyth] Bros. v. Beresford, 128 Va. 137, 169-70, 104 S.E. 371, 381-82 (1920). A person may legally agree to make a partial gift of his or her property or may legally make a bad bargain. Id. But gross disparity in the value exchanged is a significant factor in determining whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resultant agreement unconscionable. Id. at 170, 104 S.E. at 382. Other unfair and inequitable incidents in addition to the inadequacy, however, may more readily justify relief.
>
> When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative. Pomeroy, Equity Jurisprudence § 928 (5th ed. 1941).

Id. at 29, 378 S.E.2d at 79.

Historically, a bargain was unconscionable in an action at law if it was "'"'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'"'" Id. at 28, 378 S.E.2d at 79 (quoting Restatement (second) of Contracts § 208 comment b (quoting Hume v. United States, 132 U.S. 406, 411 (1889))).

"[M]arital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain." Cooley v. Cooley, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980)

- 6 -

(citation omitted); Derby, 8 Va. App. at 25, 378 S.E.2d at 77. Therefore, in this case, wife "had the burden at trial to prove by clear and convincing evidence the grounds alleged to void or rescind the agreement." Drewry v. Drewry, 8 Va. App. 460, 463, 383 S.E.2d 12, 12 (1989). On appeal, we review the evidence in the light most favorable to the prevailing party below and determine whether that evidence established as a matter of law any of the grounds wife relied upon to vitiate the agreement. Id. at 463, 383 S.E.2d at 12-13.

"Any issue of unconscionability of a [marital] agreement shall be decided by the court as a matter of law. Recitations in the agreement shall create a prima facie presumption that they are factually correct." Code § 20-151(B) (applied to post-marital/separation agreements through Code § 20-155).[4]

To determine whether an agreement is unconscionable, a court must examine the "adequacy of price" or "quality of value." Drewry, 8 Va. App. at 472, 383 S.E.2d at 18. "If a 'gross disparity in the value exchanged' exists then the court should consider 'whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resulting agreement unconscionable.'" Id. (quoting Derby, 8 Va. App. at 28, 378 S.E.2d at 79).

Thus, Derby sets forth a two-step test. Appellant must prove both 1) a gross disparity existed in the division of assets and 2) overreaching or oppressive influences. Shenk v. Shenk, 39 Va. App. 161, 179 n.13, 571 S.E.2d 896, 905 n.13 (2002). Courts must view the apparent inequity in light of other attendant circumstances to determine whether the agreement is unconscionable and should be declared invalid. Derby, 8 Va. App. at 29, 378 S.E.2d at 79.

Wife argues that "gross disparity," with nothing more, should render the agreement void as being unconscionable. As discussed above, this is not the correct legal standard. While the

---

[4] There is no recitation in the agreement that addresses the fairness of the agreement.

question of unconscionability is a matter of law, the underlying facts must be determined by the fact finder, and on appeal we determine whether there is sufficient evidence to support the factual findings. If there is credible evidence in the record supporting the factual findings made by the trier of fact, we are bound by those findings regardless of whether there is evidence that may support a contrary finding. Barnes v. Moore, 199 Va. 227, 228, 98 S.E.2d 683, 684 (1957).

Granted, the agreement gave husband approximately 94% of the marital assets. Yet, as the trial court correctly found, there was no evidence of overreaching or oppressive behavior by husband. Assuming the first prong of unconscionability is present, the second prong has not been proven. As wife conceded at oral argument, a spouse can give away his/her entire portion of the marital estate as long as there is no oppressive conduct by the other spouse. "[E]very person . . . is entitled to dispose of [his] property, in such manner and upon such terms as he chooses, and whether his bargains are wise, or discreet, or profitable, or unprofitable, or otherwise, are considerations not for courts of justice, but for the party himself to deliberate upon." Smyth Bros. v. Beresford, 128 Va. 137, 170, 104 S.E. 371, 382 (1920).

Alternatively, wife claims under Derby that there are "oppressive influences" present that render the agreement unconscionable. Wife does not claim fraud nor any breach of fiduciary relationship, yet argues the marital relationship requires "heightened examination." In her brief, wife points to the fact that the parties were living under the same roof, that husband drove wife to the bank to execute the agreement, and that wife had no attorney.

The facts belie wife's argument of overreaching. Husband and wife had discussed the contents of the agreement prior to husband having his attorney draft the agreement. Wife knew husband was going to the attorney. Husband brought the agreement to wife the night before it was executed. Wife testified she read the agreement. Husband advised wife she could consult with an attorney but wife chose not to do so. Wife testified she was not forced to sign the

agreement. The notary testified wife did not seem to be under stress or duress. She voluntarily went with husband to the bank. Wife indicated she signed the agreement because "this is what he wants." Wife characterized her action as foolish but never described it as the result of any overreaching conduct by husband. At no time did wife indicate she was under duress or that husband exercised any undue influence for her to sign the agreement. There is no evidence of oppressive behavior or coercion on husband's part.

Finally, wife argues that her waiver of spousal support "represents an additional attendant circumstance" warranting a finding of unconscionability. Again, we find no merit to wife's contention. Wife was not penniless. She had inherited $30,000 cash and a home with no debt valued at $275,000. Further, she had a pension derived from working twenty years at Eastern State Hospital. She testified she would have no difficulty becoming re-employed. Nothing in the record suggests she is incapable of enjoying financial independence. Also, husband gave wife the opportunity to consult a lawyer and/or propose any changes to the agreement. She declined these offers and elected to freely sign the agreement. For the reasons stated above, we cannot say that wife's voluntary waiver of spousal support warrants a finding of unconscionability.

While the commissioner in chancery found unconscionability, the trial court found no "accompanying circumstances indicative of bad faith or inequity under the law." Wife contends the trial court erred in overturning the commissioner's recommendation. However, a trial court is not bound by a commissioner's legal conclusions. See Dukelow v. Dukelow, 2 Va. App. 21, 26, 341 S.E.2d 208, 210 (1986) ("When a court refers a cause to a commissioner in chancery, it does not delegate its judicial functions to the commissioner, and it is not bound by the commissioner's recommendations. Rather, the court must review the evidence, apply the correct principles of law, and make its own conclusions as to the appropriate relief required.").

While the commissioner found husband did not disclose the value of his Fort Eustis pension and the value of the assets, and placed particular emphasis on wife's waiver of spousal support, the ultimate determination of unconscionability is a legal issue. Code § 20-151(B). The trial court found, as a matter of law, that the agreement was not unconscionable. We agree with the trial court.

Nothing in the record, including wife's testimony, indicates husband acted in bad faith, coerced or misled wife. She had an opportunity to obtain counsel and declined to do so. The record thus supports the trial court's ruling that the agreement constituted a valid contract.[5] Wife did not show unconscionability by clear and convincing evidence.

## CONCLUSION

For the foregoing reasons, we find that the trial court did not err in finding that the parties' agreement is valid and enforceable. The decision of the trial court is affirmed.

Affirmed.

---

[5] Since we affirm the trial court, we need not address husband's laches argument.

- 10 -