COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Frank, Alston and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


MARIAM WALLACE-LEE GUIRGUIS, F/K/A
 MARIAM GUIRGUIS SALIB
                                                           MEMORANDUM OPINION[*] BY
v.      Record No. 0038-12-1                           JUDGE ROSSIE D. ALSTON, JR.
                                                                JANUARY 15, 2013
VICTOR FAHIM SALIB


                FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                            Mary Jane Hall, Judge

            Douglas J. Walter (Lisa A. Mallory; Moschel, Clancy & Walter,
            P.L.L.C, on briefs), for appellant.

            Gregory S. Larsen (Roy, Larsen, Carnes & Romm, P.C., on brief),
            for appellee.


        Mariam Wallace-Lee Guirguis (wife) appeals an order from the trial court finding it had

jurisdiction to enter an order invalidating the parties' "Marital, Separation and Reconciliation

Agreement and Stipulation" (separation agreement).  Wife contends that the trial court erred by

(1) finding that it had jurisdiction on March 9, 2010, to enter an order invalidating the separation

agreement as the agreement was reaffirmed as a binding and enforceable agreement by an order

dated December 8, 2009 (the "December 8, 2009 show cause order"); (2) finding that it had

jurisdiction on January 22, 2010, to vacate, in part, the December 8, 2009 show cause order;

(3) finding that it had jurisdiction on April 16, 2010, to vacate, in whole, the December 8, 2009

show cause order; and (4) finding the separation agreement entered into on August 28, 2008, to

be invalid and unenforceable.  Wife also requests an award of attorney's fees and costs incurred

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

in this appeal. For the reasons that follow, we find that the trial court erred in finding that the separation agreement was unconscionable. In addition, while we find that the claim of the unconscionability of the separation agreement was not supported by the evidence, this claim was not frivolous, and we accordingly deny wife's request for fees incurred in this appeal. As a result, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

## I. Background[1]

On appeal, this Court reviews the evidence in the light most favorable to the party prevailing below, in this case husband. Derby v. Derby, 8 Va. App. 19, 26, 378 S.E.2d 74, 77 (1989).

So viewed, the evidence indicated that on July 31, 2008, wife filed a complaint in the Norfolk Circuit Court seeking a divorce from husband on the grounds of adultery, custody of the parties' four minor children, and child support. On August 28, 2008, the parties entered into a separation agreement. Paragraph (1) of the separation agreement stated that husband waived spousal support and that he

> shall have gainful employment and enjoy income sufficient to
> maintain [wife's] standard of living established during the
> marriage, and therefore agrees to pay [wife] or to [wife's] estate,
> on the first day of every month of his life 65% of his monthly
> income but in no case less than $10,000.00 . . . per month if 65%
> of his income is less than $10,000.00 for his life . . . .

The separation agreement also included a recitation stating that "[t]his agreement is considered fair by each of the parties, and each party disavows any claim that it is unconscionable."

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

On April 7, 2009, the trial court acknowledged the separation agreement in an order stating that the separation agreement was "binding and enforceable" and was "ratified, approved, and affirmed and incorporated by reference."

On October 13, 2009, wife filed a petition for a rule to show cause, alleging that husband had not complied with the trial court's April 7, 2009 order and requesting a hearing to obtain a final divorce. Among other violations, wife's petition alleged that husband was not paying child support and spousal support as required by the separation agreement. The trial court held a show cause hearing on November 4, 2009, and accepted evidence regarding both the show cause issue and the divorce issue. Instead of entering judgment, the trial court allowed husband thirty days to come to an agreement with wife on an arrangement to pay off the arrearage he owed.

On December 8, 2009, the trial court issued two orders in response to the November 4, 2009 hearing: the December 8, 2009 show cause order and a final decree of divorce. Both orders contained a paragraph transferring all proceedings regarding spousal support, child support, custody, and visitation to the Virginia Beach Juvenile and Domestic Relations District Court (JDR court). Both orders also stated in their respective final paragraphs, "Nothing [f]urther remaining to be done, this cause shall be stricken from the docket and placed among the ended causes." The show cause order stated that the separation agreement was "reaffirmed and determined and declared to be binding and enforceable as previously ordered by the court in an Order entered on April 7, 2009."

On December 28, 2009, husband moved to vacate the final decree of divorce. The trial court entered an order vacating the final decree that same day. Husband did not move to modify, suspend, or vacate the December 8, 2009 show cause order.

Husband filed a "Motion to Invalidate the Separation Agreement" on January 19, 2010. Shortly thereafter, the trial court held a hearing on husband's motion. The parties submitted evidence showing that they married in 1996 and separated in July 2008, when husband left the marital residence. The parties had four children who were all under the age of ten. Husband was a licensed medical doctor who practiced as a family physician. Wife had been employed as an engineer early in the marriage, but had decided to stop working when husband began practicing medicine. The evidence also showed that the parties were both active members of the Christian Coptic Orthodox Church of Egypt. Both parties testified that the church played an active role with counseling and efforts to facilitate reconciliation in the marriage.

Husband also testified at the hearing. Husband testified that he received the separation agreement from wife's attorney along with a letter urging him to consult counsel before signing it. Husband further testified that he initially informed wife that he could not sign the separation agreement because the requirements exceeded his earnings. Husband also testified that in August 2008, the parties traveled to Richmond, Virginia, to meet with Father Samuel, a priest in the Christian Coptic Orthodox Church of Egypt. After this meeting, husband returned to the marital home, and the parties maintained a full marital relationship for approximately two months. Shortly after reconciling, husband spoke with Father Samuel, who advised husband that wife wanted him to sign the separation agreement as a show of good faith and that wife promised Father Samuel she would not enforce the agreement against husband. Husband testified that he informed Father Samuel that he could not meet the requirements of the separation agreement, but he would sign it out of respect for the priest. After discussing the issue with Father Samuel, husband signed the separation agreement. Father Samuel also testified at this hearing that

husband said he would sign the separation agreement for the sake of peace even though he knew it could be used against him later.

Also during the hearing, the trial court accepted into evidence an analysis of husband's disposable income. That analysis demonstrated that in 2008, after deducting for husband's FICA, Medicare tax, federal income tax, and state income tax, husband was left with $145,040 or $12,086 per month in take-home income.

On February 19, 2010, based on the hearing and husband's "Motion to Invalidate the Separation Agreement," the trial court ruled that the separation agreement was unconscionable. The trial court's letter opinion indicated that the trial court found husband's testimony credible. The trial court found as a matter of fact that the separation agreement resulted in a gross disparity of the division of assets and "impose[d] financial obligations on [husband] that are literally impossible for him to satisfy." Even at his highest earning capacity, the trial court determined that husband would be in breach of his obligations under the separation agreement. Relying on Sims v. Sims, 55 Va. App. 340, 685 S.E.2d 869 (2009), the trial court found that in addition to creating a gross disparity, "enforcement of the [separation] Agreement and the resulting deprivation that would ensue to Husband, would create the 'pecuniary necessity' . . . sufficient to" render the separation agreement unconscionable.

In addition, the trial court determined that "the evidence clearly and convincingly established the overreaching or oppressive influences that induced Husband to sign." Specifically, the trial court found that husband "was led to believe that reconciliation depended" on his signing the separation agreement and that in signing the separation agreement husband "relied on the specific assurance from his priest that Wife had promised she would not use the [separation] Agreement against him." Accordingly, the trial court found that wife took

- 5 -

advantage of Father Samuel's influence over husband in order to procure his signature. The trial court memorialized these findings in an order issued on March 9, 2010.

On April 16, 2010, the trial court entered an order vacating the December 8, 2009 show cause order. The April 16, 2010 order stated that the December 8, 2009 show cause order was vacated because it was issued in response to a violation of a separation agreement that had been subsequently set aside by the trial court on March 9, 2010.

A bench trial commenced in December 2010 addressing the issues of equitable distribution of the parties' marital property, spousal support, custody of the parties' minor children, and child support. On January 27, 2011, the trial court entered an amended final decree of divorce. Both parties filed additional motions with the trial court in the months following the amended final decree of divorce.[2] Finally, on November 22, 2011, the trial court issued the final order from which wife now appeals.

## II. Analysis

### A. December 8, 2009 Show Cause Order

Rule 1.1 states, in pertinent part, that

> [a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer . . . . The date of entry of any final judgment, or order, or decree shall be the date the judgment, order, or decree is signed by the judge.

On appeal, wife argues that the December 8, 2009 show cause order was a final order, and, accordingly, the trial court violated Rule 1.1 by finding that it had jurisdiction to invalidate

---

[2] While these additional motions, and the trial court's corresponding orders, determined the procedural posture of the present case, they are not relevant to the Court's holding and are not necessary to the parties' understanding of the disposition of this appeal. Accordingly, we do not address them here.

and later vacate the show cause order more than twenty-one days after entry.[3] Because we find the December 8, 2009 show cause order was not a final order and, thus, Rule 1.1 did not divest the trial court of control over the December 8, 2009 show cause order after twenty-one days of its entry, we reject wife's argument.

"[A] final order 'is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order.'" de Haan v. de Haan, 54 Va. App. 428, 436-37, 680 S.E.2d 297, 302 (2009) (quoting James v. James, 263 Va. 474, 481, 562 S.E.2d 133, 137 (2002)). "An order is not final and appealable if claims against the defendant remain unresolved." Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc., 259 Va. 92, 107, 524 S.E.2d 420, 428 (2000) (citing Leggett v. Caudill, 247 Va. 130, 133, 439 S.E.2d 350, 351 (1994)). "[A]n order that 'retains jurisdiction to reconsider the judgment or to address other matters still pending' is not a final order." Prizzia v. Prizzia, 45 Va. App. 280, 285, 610 S.E.2d 326, 329 (2005) (quoting Super Fresh Food Mkts. of Va., Inc. v. Ruffin, 263 Va. 555, 561, 561 S.E.2d 734, 737 (2002)).

The December 8, 2009 show cause order was not a final order because it failed to dispose of the whole subject of the cause. This case originated when wife filed a complaint for divorce with the trial court, in which wife requested a divorce on the grounds of adultery, alimony, sole custody of the parties' minor children, child support, and, in the event that the parties reached an agreement, that the parties' agreement be affirmed, ratified, and incorporated by reference but not merged in the trial court's decree of divorce. While the December 8, 2009 show cause order

---

[3] Wife's first three assignments of error, while challenging the trial court's jurisdiction at three distinct stages in this case, rely on the same legal principle: the show cause order was a final judgment, which was not modified, suspended, or vacated within twenty-one days. Accordingly, we consider wife's initial three assignments of error in one combined analysis.

reaffirmed the parties' separation agreement, the order did not resolve all of the issues before the trial court. Most importantly, the December 8, 2009 show cause order did not address wife's request for a divorce. See de Haan, 54 Va. App. at 437-38, 680 S.E.2d at 302 (noting that the trial court's order was not final and appealable because claims against the defendant remained unresolved, namely, the trial court did not grant a divorce); Polumbo v. Polumbo, 13 Va. App. 306, 307-08, 411 S.E.2d 229, 229-30 (1991) (finding a decree that invalidated an antenuptial agreement was not a final order where the decree was entered during the course of a divorce proceeding in which a final divorce decree was not entered).

Because the December 8, 2009 show cause order did not address the parties' complaint for divorce, and thus did not "'dispose[] of the whole subject,'" de Haan, 54 Va. App. at 436-37, 680 S.E.2d at 303 (quoting James, 263 Va. at 481, 562 S.E.2d at 137), wife's argument that the December 8, 2009 show cause order was a final order because it included language that transferred the remaining issues of spousal support, child visitation, child support, and child custody to the Virginia Beach JDR court is unavailing. Likewise, although the December 8, 2009 show cause order expressly stated that nothing further remained to be done, this language does not, by itself, render the order final, as wife asserts. See de Haan, 54 Va. App. at 438, 680 S.E.2d at 303 ("The fact that an order is labeled as final is not dispositive on its finality; the order must, in fact, be final."); Commonwealth v. Lancaster, 45 Va. App. 723, 731, 613 S.E.2d 828, 832 (2005) (finding an order was not final "[d]espite its title as the 'Final Order'"); Estate of Hackler v. Hackler, 44 Va. App. 51, 60-61, 602 S.E.2d 426, 430-31 (2004) (finding the order was not final despite being labeled "Final Order").

Because the December 8, 2009 show cause order failed to resolve the whole subject of wife's cause, we find that the December 8, 2009 show cause order was not a final order.

Accordingly, the trial court did not lose jurisdiction over the order after twenty-one days under Rule 1.1. Therefore, the trial court did not err in (1) finding that it had jurisdiction on March 9, 2010, to enter an order invalidating the separation agreement; (2) finding that it had jurisdiction on January 22, 2010, to vacate, in part, the December 8, 2009 show cause order; and (3) finding it had jurisdiction on April 16, 2010, to vacate, in whole, the December 8, 2009 show cause order.

### B. Unconscionability

Wife next assigns error to the trial court's determination that the parties' separation agreement was unconscionable. Wife contends that the evidence does not support the trial court's finding of overreaching and oppressive influences inducing husband to sign the separation agreement. For the reasons identified below, we hold that the evidence did not establish as a matter of law that the separation agreement was unconscionable.

"'Any issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law. Recitations in the agreement shall create a prima facie presumption that they are factually correct.'" Sims, 55 Va. App. at 348, 685 S.E.2d at 873 (quoting Code § 20-151(B)). Here, recitations in the agreement stated that "[t]his agreement is considered fair by each of the parties, and each party expressly disavows any claim that it is unconscionable." "Therefore, pursuant to Code § 20-151(B), the presumption is that the agreement is not unconscionable." Sims, 55 Va. App. at 349, 685 S.E.2d at 873.

Accordingly, husband "had the burden at trial to prove by clear and convincing evidence the grounds alleged to void or rescind the agreement." Drewry v. Drewry, 8 Va. App. 460, 463, 383 S.E.2d 12, 12 (1989). In order to meet his burden, husband was required to demonstrate 1) a

gross disparity existed in the division of assets[4] and 2) the presence of overreaching or oppressive influences. Galloway v. Galloway, 47 Va. App. 83, 92, 622 S.E.2d 267, 271 (2005) (citing Shenk v. Shenk, 39 Va. App. 161, 179 n.13, 571 S.E.2d 896, 905 n.13 (2002)).

Overreaching and oppressive influences can be demonstrated in one of two ways:

> "When accompanying incidents are inequitable and show [(a)] bad faith, such as concealments, misrepresentations, undue advantage, [or] oppression on the part of the one who obtains the benefit, or [(b)] ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with [evidence of the first prong,] inadequacy of price, may easily induce a court to grant relief, defensive or affirmative."

Sims, 55 Va. App. at 349-50, 685 S.E.2d at 873 (quoting Derby, 8 Va. App. at 28-29, 378 S.E.2d at 79).

Here, the evidence, even when viewed in the light most favorable to husband, fails to show that husband proved by clear and convincing evidence that wife exerted overreaching or oppressive influences in seeking husband's signature on the parties' separation agreement.

In finding the separation agreement unconscionable, the trial court determined that "Husband was induced to sign the [separation] Agreement by overreaching and undue influence on the part of, or on behalf of, Wife," namely, that wife "took advantage of the influence that Father Samuel exerted over her husband to procure her husband's agreement to sign." In

---

[4] Wife did not address on brief or during oral argument the trial court's finding that the separation agreement produced a gross disparity in the division of assets. Notwithstanding wife's waiver of this issue, we note that the test for unconscionability is stated in the conjunctive: One claiming unconscionability must show both gross disparity *and* oppressive or undue influence. Galloway v. Galloway, 47 Va. App. 83, 92, 622 S.E.2d 267, 271 (2005) (citing Shenk v. Shenk, 39 Va. App. 161, 179 n.13, 571 S.E.2d 896, 905 n.13 (2002)). Since wife waived this issue, we consider only whether the evidence adduced at trial proved as a matter of law that wife used overreaching or oppressive influences in procuring husband's signature on the parties' separation agreement. See Rule 5A:20(e) (requiring appellant to include in the opening brief the argument, including principles or law and authorities, relating to each assignment of error).

particular, the trial court referenced husband's "belie[f] that reconciliation depended on" his signing the separation agreement, and the priest's "direct request to [husband] to sign the [separation] Agreement as a show of good faith," as well as the priest's assurance that "[w]ife would not use the [separation] Agreement against [husband]." The trial court found these facts similar to those in Derby, 8 Va. App. 19, 378 S.E.2d 74, where this Court found a separation agreement unconscionable because of the wife's concealment and misrepresentation.

In Derby, the trial court found that Mr. Derby "engaged in magical thinking that somehow signing the agreement would save his marriage" and that while Mrs. Derby was not responsible for his emotional problems, "she took advantage of them in a manner that induced an unconscionable agreement." Id. at 22-23, 378 S.E.2d at 81. In particular, the trial court found that Mrs. Derby concealed from her husband her relationship with another man and misrepresented the situation in order to encourage Mr. Derby's belief that the parties might reconcile. Id. at 21, 378 S.E.2d at 80. Moreover, the trial court noted that the parties did not discuss or negotiate the terms of the agreement prior to Mrs. Derby confronting Mr. Derby with the agreement. Id. at 23-24, 378 S.E.2d at 81. And, the trial court also noted that Mrs. Derby confronted Mr. Derby with the agreement at a time before Mr. Derby's lawyer had the opportunity to review the agreement with Mr. Derby, "and a time early in the morning on a day when she knew Mr. Derby would be alone." Id. at 24, 378 S.E.2d at 81. Accordingly, "[t]he circumstances of Mrs. Derby's concealment and misrepresentation about her conduct and intentions were major considerations which induced Mr. Derby to sign the contract." Id.

While we appreciate the trial court's sensitivity to the immoderate circumstances presented herein, we find the trial court's reliance on Derby misplaced. Although the trial court noted that husband, like Mr. Derby, "signed because he was led to believe that reconciliation

- 11 -

depended on it," there is no indication in the record that wife misrepresented her interest in reconciliation or took advantage of husband's interest in reconciliation in order to procure his signature. In fact, husband testified that at the time he signed the separation agreement he had moved back into the marital home with wife, they were attempting to reconcile, and they "had a full marital relationship" for approximately two months thereafter.

For similar reasons, we find that Father Samuel's role in urging husband to sign the separation agreement in order to facilitate reconciliation, while not inconsequential, does not constitute oppressive or undue influence. The record does not suggest that wife manipulated husband into signing the separation agreement by unfairly appealing to his respect for Father Samuel. Rather, the record demonstrates a committed attempt by wife to reconcile with husband, which was facilitated by both parties requesting intervention by Father Samuel, resulting in husband's willingness to sign the separation agreement.

Moreover, husband's assertion that he would not have signed the separation agreement but for Father Samuel's insistence that wife would not enforce the separation agreement is insufficient to find as a matter of law that wife engaged in oppressive or undue influence. In the present case, unlike Derby, there is no evidence that wife initiated signing of the separation agreement in such a way to prevent husband from seeking legal advice. See Derby, 8 Va. App. at 24, 378 S.E.2d at 81 ("Mrs. Derby, who initiated the signing, chose a day after her lawyer had drawn up an agreement but when Mr. Derby's lawyer had not reviewed it with him, and a time early in the morning on a day when she knew Mr. Derby would be alone."). Rather, husband had the opportunity to seek legal counsel before signing the separation agreement. Wife's attorney even included with the separation agreement an explicit statement encouraging husband to seek legal counsel, but husband chose not to do so. See Galloway, 47 Va. App. at 93, 622 S.E.2d at

272 (finding the "facts belie wife's argument of overreaching" where, among other factors, "[h]usband advised wife she could consult with an attorney but wife chose not to do so").  If husband had taken the time for even a brief legal consultation, he would have known that wife's assurance of non-enforcement would not shield him from the significant obligations to which he would expose himself by signing the separation agreement.  See Walker & Laberge Co. v. First Nat'l Bank, 206 Va. 683, 690, 146 S.E.2d 239, 244 (1966) ("The general principle that evidence of a contemporaneous parol agreement is not admissible to vary or contradict the terms of a valid written instrument, except in cases of fraud or mistake, is so familiar and well established that citation of authority in its support would seem to be superfluous.").

Wife had already filed for divorce when the parties decided to attempt reconciliation.  It is clear from the record that husband's signing the separation agreement was necessary before wife would attempt to reconcile.  Wife articulated this fact, and there is no evidence in the record to suggest that she misrepresented her interest in reconciling simply to procure husband's signature.  Cf. Derby, 8 Va. App. 19, 378 S.E.2d 74 (finding wife's misrepresentation of her interest in returning to the marriage was a major consideration that induced husband to sign the agreement).  Absent any such misrepresentation, wife's request that husband sign the separation agreement cannot reasonably be construed as oppressive.  While this Court has recognized that the relationship between a husband and wife is susceptible to "subtle overreaching and misrepresentation" that differs from the typical arm's length context, Derby, 8 Va. App. at 29, 378 S.E.2d at 79, this unique circumstance cannot be construed as a license for courts to "'relieve one of the consequences of a contract merely because it is unwise,'" id. at 30, 378 S.E.2d at 79 (quoting Owens v. Owens, 196 Va. 966, 974, 86 S.E.2d 181, 186 (1955)).  Because husband has not proved as a matter of law that wife engaged in overreaching or oppressive

influences, we find that the trial court erred in ruling that the separation agreement was unconscionable.

We also find that the evidence does not prove as a matter of law that the separation agreement "would create the pecuniary necessity" that this Court in <u>Sims</u>, 55 Va. App. 340, 685 S.E.2d 869, found would necessarily establish both prongs of the unconscionability test.

In <u>Sims</u>, we found an agreement unconscionable where "the evidence established not only a gross disparity in the division of assets but also infirmity and pecuniary necessities which, in combination, established unconscionability." <u>Id.</u> at 354-55, 685 S.E.2d at 875. In reaching this conclusion, we noted that "in cases involving separation agreements, 'unlike commercial contracts, the state itself has an interest in the terms and enforceability of [the] agreement[]' because, '[i]f either spouse is left in necessitous circumstances by a separation agreement, that spouse . . . might become [a] public charge[].'" <u>Id.</u> at 353, 685 S.E.2d at 875 (alterations in original). In <u>Sims</u>, the evidence adduced in the trial court demonstrated that Mrs. Sims was totally disabled at the time of the evidentiary hearing and had qualified to receive food stamps. <u>Id.</u> at 352, 685 S.E.2d at 875. Accordingly, we held that the agreement, which relinquished Mrs. Sims' claim to "almost 100% of the marital estate," and "left her penniless *with no practical means for supporting herself*," was unconscionable. <u>Id.</u> at 353, 685 S.E.2d at 875 (emphasis added).

The facts of this case are distinguishable from <u>Sims</u>. We explained in <u>Sims</u> that in the absence of overreaching or oppressive influences, the state nevertheless retained an interest in the terms of separation agreements that might result in a spouse becoming a public charge, and we noted that Mrs. Sims "had in fact already become a public charge." <u>Id.</u> The separation agreement entered into by husband does not raise such concerns. Unlike <u>Sims</u>, husband was not

left penniless and without means for supporting himself due to physical disability or lack of education. Husband is a licensed medical doctor who earns a significant annual salary. The separation agreement extracts significant monetary obligations from husband, and while it was arguably unwise for husband to sign the separation agreement, it does not permanently foreclose his capacity to support himself.

While the requirements of the separation agreement are significant and burdensome to husband, it is not the role of this Court to intervene on behalf of a spouse who has chosen to enter a disadvantageous agreement when there is no proof of oppressive conduct by the other spouse. "'Every person is entitled to dispose of his property, in such manner and upon such terms as he chooses, and whether his bargains are wise, or discreet, or profitable, or unprofitable, or otherwise, are considerations not for courts of justice, but for the party himself to deliberate upon.'" Galloway, 47 Va. App. at 93, 622 S.E.2d at 272 (quoting Smyth Bros. v. Beresford, 128 Va. 137, 170, 104 S.E. 371, 382 (1920)) (finding an agreement that gave husband approximately 94% of the marital assets valid and enforceable). Accordingly, we hold the evidence, viewed in the light most favorable to husband, failed to establish as a matter of law that the separation agreement was unconscionable.[5]

### C. Attorney's Fees

Wife seeks an award of attorney's fees incurred on appeal.

> The rationale for the appellate court being the proper forum to
> determine the propriety of an award of attorney's fees for efforts
> expended on appeal is clear. The appellate court has the

---

[5] We note that this holding is confined to the issue of unconscionability and does not reflect this Court's judgment on such issues as child custody or child support, which the trial court can consider upon remand. See generally Code § 20-108.2(C)(4) ("For purposes of this subsection: (i) spousal support received shall be included in gross income and spousal support paid shall be deducted from gross income when paid pursuant to an order or written agreement . . . .").

opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

Because we find that the trial court did not err in vacating the December 8, 2009 show cause order more than twenty-one days after its entry, and because we find that the claim of unconscionability was not frivolous, though ultimately not supported by the evidence, we deny wife's request for fees incurred in this appeal.

### III. Conclusion

For these reasons, we find that the December 8, 2009 show cause order was not a final order and the trial court did not err in vacating the order more than twenty-one days after it was entered. We also find that the evidence was not sufficient to find as a matter of law that the parties' separation agreement was unconscionable, and we reverse that decision of the trial court and remand for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.
