COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Causey and Senior Judge Haley
Argued at Richmond, Virginia


RANDY LEE REMILLARD

                                                          MEMORANDUM OPINION* BY
v.       Record No. 1063-21-2                        JUDGE RICHARD Y. ATLEE, JR.
                                                             SEPTEMBER 6, 2022
TERRI LEE REMILLARD


FROM THE CIRCUIT COURT OF CHARLES CITY COUNTY
B. Elliott Bondurant, Judge

Richard G. Collins (Collins & Hyman, P.L.C., on briefs), for
appellant.

Brandy M. Poss (Barnes & Diehl, P.C., on brief), for appellee.


Appellant Randy Lee Remillard ("husband"[1]) argues that the circuit court erred in finding

that the premarital agreement signed by him and appellee Terri Lee Remillard ("wife") was

unconscionable and without "fair and reasonable disclosure" of the parties' assets under Code

§ 20-151(A)(2), and therefore it was unenforceable. We affirm.

I. BACKGROUND

On appeal, we view the evidence in the light most favorable to wife, the prevailing party,

and draw any reasonable inferences from that evidence in her favor. *Congdon v. Congdon*, 40

Va. App. 255, 258 (2003). We "discard the evidence" of husband which conflicts with this

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We recognize that "former husband" and "former wife" are more accurate designations.
Nevertheless, we use these less cumbersome titles in this memorandum opinion for ease of
reference.

evidence. *Id.* (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002)). Viewed "through this evidentiary prism," *id.* at 259, the facts are as follows.

The parties married in 2014. Prior to their marriage, wife relocated from Arkansas, where she was a bank loan officer, to live in Virginia with husband. She left her job and sold her home there based on husband's promise that "he was going to take care of [her]." Husband owned several businesses, and wife began to work for him at his rental property management company. As the business grew, wife went from managing eight rental properties to fifty-seven by the time she stopped in 2018. She never acquired any ownership stake in any of husband's companies.

The afternoon before their wedding day, husband presented wife with a premarital agreement (the "Agreement"). He emphasized that the wedding the following day was contingent upon her signing it. Given the timing, wife did not have time to consult an attorney about the Agreement.[2] Nevertheless, wife acquiesced and signed it.

Under the Agreement, husband and wife would separately retain their individual property, including assets or earnings acquired during the marriage. It stated, "[t]he separate property will be free and clear of any claim of the other party, upon separation or otherwise, without regard to any time or effort invested during the course of the marriage in the maintenance, management, or improvement of the separate property." Both parties waived any rights to the other's assets in the event of divorce or death. It did not allow changes or

---

[2] The primary reason husband agreed to get married, and the importance of the wedding taking place on December 30, 2014, was because his accountant determined that he would have substantial tax savings if they were married and filed jointly rather than separately.

modifications in the event of changed circumstances.[3] All separate property, "whether now owned or hereafter acquired," would remain "free from any claim that may be made by the other by reason of their marriage and with the same effect as if no marriage had been solemnized between them."

The Agreement also provided:

> Each party has made a full and complete disclosure to the other of the property owned by him or her at the time of the execution of this Agreement by a written summary delivered to the other; copies of the summaries entitled Exhibit A for Randy Remillard (husband) as prepared by him, and Exhibit B for Terri Doffitt (wife) as prepared by her, respectively, having been exchanged between the parties. Each party acknowledges that he or she has examined and understands the summary prepared by the other.

Although the Agreement stated that there was "full and complete" financial disclosure, the exhibits referenced in the Agreement where those disclosures were purportedly made (Exhibits A and B) were left blank, save for the documents' titles.

Wife filed for divorce in 2019 on the grounds of "constructive desertion and/or cruelty." She asked the circuit court to set aside the Agreement as unenforceable due to it being unconscionable. At the hearing determining, *inter alia*, whether the Agreement was valid, wife explained that she had no idea what husband's assets were at the time she signed the Agreement. She learned in 2015, while helping to prepare a loan application for a home equity line of credit on their home, that husband's assets exceeded ten million dollars. Husband acknowledged that he did not discuss his assets with wife before they signed the Agreement.

---

[3] The single limited exception to the Agreement's overall goal of keeping husband's and wife's property completely separate was to provide support for children in the event they had or adopted any, which they did not.

The circuit court set aside the Agreement as unenforceable.[4]  It emphasized:

> as I read the premarital agreement, [wife] gets nothing.  There's
> nothing in there provided for her.  Or in the absence of such
> provision, there must have been full and frank disclosure to her of
> the husband's worth before the wife signed the agreement.  She
> must have signed freely and voluntarily and with competent
> advice, with full knowledge of her rights.  Well, in this agreement,
> there was no disclosure.

Following a hearing on equitable distribution, the circuit court entered a final decree of divorce on September 7, 2021.  It awarded wife $66,148.29 as her share of the marital residence, a single payment of spousal support of $10,000 for March 2021, and $20,000 for attorney fees and costs.  This appeal followed.

## II.  ANALYSIS

### A.  *Standard of Review*

Whether a premarital agreement is unconscionable is a matter of law, which we review *de novo*.  Code § 20-151(B) ("Any issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law.").  "While the question of unconscionability is a matter of law, the underlying facts must be determined by the fact finder, and on appeal we determine

---

[4] Wife argues that husband should have filed an interlocutory appeal once the circuit court entered the order setting aside the Agreement and that his appeal is defective for appealing only the final decree.  While a party may pursue an interlocutory appeal under certain circumstances, *see Chaplain v. Chaplain*, 54 Va. App. 762, 768-69 (2009) (allowing interlocutory appeals when the order appealed is "an adjudication of all the questions raised by the complainant's bill" (quoting *Crowder v. Crowder*, 125 Va. 80, 83 (1919))), "[t]he failure of a party to seek interlocutory review [by the Court of Appeals] shall not preclude review of the issue on appeal from a final order."  Code § 8.01-675.5(D).  We therefore need not reach whether an interlocutory appeal would have been available or appropriate, as it was not required. *See Foltz v. Commonwealth*, 58 Va. App. 107, 114 (2011) ("In this case, as in all others, we seek to decide cases, 'on the best and narrowest ground available' from the record." (quoting *Kirby v. Commonwealth*, 50 Va. App. 691, 698 n.2 (2007))).  Moreover, "appeals from interlocutory orders are not favored in the law" given their "disruptive, time-consuming, and expensive" nature. *Chaplain*, 54 Va. App. at 770 (quoting *de Haan v. de Haan*, 54 Va. App. 428, 441 (2009)).

- 4 -

whether there is sufficient evidence to support the factual findings." *Galloway v. Galloway*, 47

Va. App. 83, 92 (2005). "If there is credible evidence in the record supporting the factual

findings made by the trier of fact, we are bound by those findings regardless of whether there is

evidence that may support a contrary finding." *Id.*

### B. Unconscionability and "fair and reasonable disclosure" of assets

Code § 20-151(A) provides:

> A premarital agreement is not enforceable if the person against
> whom enforcement is sought proves that:
>
> 1. That person did not execute the agreement voluntarily; or
>
> 2. The agreement was unconscionable when it was executed and,
>    before execution of the agreement, that person (i) was not
>    provided a fair and reasonable disclosure of the property or
>    financial obligations of the other party; and (ii) did not
>    voluntarily and expressly waive, in writing, any right to
>    disclosure of the property or financial obligations of the other
>    party beyond the disclosure provided.

"There is a two-step test that courts must apply in determining whether an agreement is

unconscionable: '1) a gross disparity existed in the division of assets and 2) overreaching or

oppressive influences.'" *Chaplain v. Chaplain*, 54 Va. App. 762, 773 n.4 (2009) (quoting

*Galloway*, 47 Va. App. at 92).

Here, the Agreement, if enforced, would entail a "gross disparity" in the division of

assets. *Id.* (quoting *Galloway*, 47 Va. App. at 92). As the circuit court held, "nothing in [the

Agreement] provided for [wife]." It made no allowances for, and in fact expressly prohibited her

from receiving any benefit from, the increased value of husband's assets attributable to her

efforts working for husband's business. She could not, under the Agreement, receive any portion

of assets earned or purchased with income from those businesses, as it permitted husband to title

everything in his name "free from any claim that may be made by the other by reason of their marriage and with the same effect as if no marriage had been solemnized between them."

There also were "overreaching or oppressive influences" at play when wife signed it. *Chaplain*, 54 Va. App. at 773 n.4 (quoting *Galloway*, 47 Va. App. at 92). Husband waited until the last moment—the afternoon before their wedding day—to present wife with the Agreement, making the wedding contingent upon her signing it and providing no time for her to consult an attorney. In addition, this all took place after wife, going on husband's assurances that he would take care of her, sold her home and left her career in Arkansas and had become dependent on husband and his businesses for her livelihood. As such, because the evidence supports the findings that a "gross disparity existed in the division of assets" and that there were "overreaching or oppressive influences" at play, *id.* (quoting *Galloway*, 47 Va. App. at 92), the circuit court did not err in finding the Agreement unconscionable.

Furthermore, there was no "fair and reasonable disclosure" of assets before the parties signed the Agreement. Although the Agreement sets forth that there was "full and complete" financial disclosure between husband and wife and that each party prepared a written summary of their assets, the totality of the Agreement facially contradicts those assertions. The purported disclosures referenced, Exhibits A and B, listed no assets for either party—they were blank save for the titles indicating that they were the exhibits listing the "assets of [husband]" and "assets of [wife]." The circuit court expressly found wife's testimony, including that she was unaware of the extent of husband's assets when she signed the Agreement, most credible. Furthermore, husband admitted before the circuit court that he did not discuss his assets with wife before they signed the Agreement, emphasizing that she should have been able to make inferences based on her work for his property management business. Wife's general awareness of some of husband's assets does not amount to "fair and reasonable disclosure" under Code § 20-151(A), much less

the "full and complete" financial disclosure the Agreement sets forth. Accordingly, there was no "fair and reasonable disclosure of the property or financial obligations of the other party." Code § 20-151(A).

Finally, wife did not waive her right to financial disclosure. Under Code § 20-151(A)(2)(ii), wife needed to "voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations." That did not occur. The mere fact that she signed this document, despite its obvious omissions, does not amount to a waiver of the right to receive financial disclosure. Under the Agreement, both parties "made a full and complete disclosure to the other of the property owned by him or her" and by signing it, they "acknowledge[d] that he or she has examined and understands the summary prepared by the other," even though it clearly did not include such disclosures. Yet this is not sufficient to waive such disclosure under Code § 20-151(A)(2)(ii). Accordingly, no waiver of the right to financial disclosure occurred, and the circuit court did not err in finding that the failure to provide such disclosure rendered the Agreement unconscionable and, therefore, unenforceable.

### C. Attorney Fees and Costs

Wife requests an award of attorney fees and costs incurred during this appeal. "[T]he Court of Appeals may award some or all of the fees and costs requested or 'remand the issue to the circuit court . . . for a determination thereof.'" *Dixon v. Dixon*, 71 Va. App. 709, 722 (2020) (second alteration in original) (quoting former Rule 5A:30(b)(2)). Such an award is "discretionary," and "the Court may consider factors including whether the requesting party has prevailed, whether the appeal was 'fairly debatable' or frivolous, and whether other reasons exist to support an award of attorney's fees and costs." *Id.* (citing *Brandau v. Brandau*, 52 Va. App. 632, 642 (2008)) (other citations omitted). In doing so, we "may consider all the equities of the

case." Rule 5A:30(b)(3). Taking into account these considerations, we decline to award attorney fees and costs to wife.

### III. CONCLUSION

The circuit court did not err in finding that the parties' premarital agreement was unconscionable and therefore unenforceable. Wife's request for attorney fees and costs is denied. Accordingly, the circuit court is affirmed.

*Affirmed.*