COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Ortiz and Chaney

SEONG JA RECTOR

                                          MEMORANDUM OPINION* BY
v.        Record No. 0859-24-4          CHIEF JUDGE MARLA GRAFF DECKER
                                              OCTOBER 14, 2025

EUN RYONG KIM, INDIVIDUALLY, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Kathleen M. Uston, Judge

(James Y. Victory; Hanmi Center for Justice, PLLC, on briefs), for
appellant. Appellant submitting on briefs.

(George O. Peterson; Aaron S. Book; Alex Xanttopoulos; Jacob
Markin; Law Office of George O. Peterson, PLC; Webster Book,
LLP; Roop Xanttopoulos Babounakis & Klam, PLLC, on brief), for
appellees.

        Seong Ja Rector (the wife) appeals the trial court's order dismissing her petition for an

elective share, family and homestead allowances, and exempt property from the estate of Edwin

Rector (the husband). The wife contends that the trial court erred in converting the jury trial to a

bench trial and denying her continuance motion after considering a last-minute motion to strike her

request for a jury. The wife also argues that the copy of the premarital agreement and testimony

from the executor of the husband's estate, Eun Ryong Kim (Kim), were inadmissible. She further

suggests the trial court erred in not permitting her witness to testify about the premarital agreement.

Finally, the wife argues that the trial court erred in finding her premarital agreement with the

---

\* This opinion is not designated for publication. *See* Code § 17.1-413(A).

husband admissible and enforceable. For the following reasons, we disagree and affirm the trial court's decision.[1]

BACKGROUND[2]

Seong Ja Rector met her husband, Edwin Rector, at the salon where she worked. The husband was a regular client, and, during one visit, the wife told him that she would soon be deported. The husband suggested that they marry and that he would help her obtain a green card. She agreed, and at least seven weeks before the wedding, the husband asked her to sign a premarital agreement. The wife signed it, and the couple married in October 2015 and remained married until the husband's death in January 2023.

After the wedding, the husband kept his word and helped the wife with the green card process. Other steps taken by the husband following the marriage included adding the wife to the deed of the house and designating her as the beneficiary of his IRA account.

In 2022, the husband entered an assisted living home due to declining health and becoming "totally blind." His poor health led him to ask Kim, who was a mutual friend of both the husband and the wife, to be his power of attorney to assist him with different financial and legal matters. The husband's relationship with the wife had deteriorated, and he eventually filed for divorce later that year. In preparation for the divorce, the husband asked Kim to find the premarital agreement.

---

[1] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

[2] When this Court reviews a ruling on a plea in bar on which the parties have presented evidence, the Court "[]view[s] th[at] evidence in the light most favorable to the prevailing parties and accept[s] as true any reasonable inferences that c[an] be drawn from the evidence." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 117 (2017). We therefore recite the relevant facts in the light most favorable to Kim, as the prevailing party below.

Kim had heard of the premarital agreement before from the wife. She had mentioned to Kim that she had signed an agreement before marrying the husband. She described it as a contract that conditioned the marriage on the husband helping her with the green card process and, in return, she would care for him and not access his money. After the husband had moved into the assisted living home, the wife began searching for the premarital agreement and even asked Kim to inquire with the husband where he kept it because she could not find it. The wife told Kim she wanted to find it and destroy it because she was worried about not receiving any money.

Eventually, Kim found a copy of the agreement among the husband's office materials. Kim took the agreement to the husband and, due to his blindness, read it to him in its entirety. The husband confirmed that this was the premarital agreement the parties had signed.

While the petition for divorce was pending, the husband passed away. His last will and testament named Kim as the executor of his estate, and she submitted it to the probate court in March 2023. The will did not include any provision for the wife. It explicitly stated that the husband "knowingly and intentionally ma[d]e no provision" for the wife because he was "in the process of divorcing her."

The wife petitioned for certain statutory allotments of the husband's estate. *See* Code §§ 64.2-308.3, -309, -310, -311. Kim filed a demurrer and plea in bar to the petition, arguing that the wife waived her rights to the statutory elections in her premarital agreement with the husband. The signed premarital agreement contained a "Waiver of Rights in Property and Estate of the Other" in which each spouse waived "all rights which he or she may at any time have during the life or after the death of the other." The agreement also waived "all rights which he or she may at any time have . . . in the estate of the other after the other's decease, including, without limitation, the right to take an elective share, the share of an omitted spouse, a homestead allowance, an exempt property and family allowance," or any other rights under Virginia law.

In discovery, Kim's interrogatories asked the wife to identify "each person who may have knowledge of [her] signing" the premarital agreement. The wife answered that she was not aware of anyone with that knowledge. She also answered "none" to the interrogatory that requested information regarding anyone with whom she had discussed the premarital agreement. In those discovery responses, the wife acknowledged that the signature on the premarital agreement appeared to be hers but denied a notary public was present when she signed it. The wife also claimed that she was given only the signature page and did not see the entire agreement.

The morning of the plea in bar hearing, Kim moved to strike the jury that had been scheduled. The trial court noted that the case record did not contain any pleadings requesting a jury trial. The wife moved to continue the hearing based on the last-minute nature of the motion, but the court denied the continuance request.

The matter proceeded as a bench trial. Kim testified about her relationship with the husband and wife, her assistance to the husband, and her search for the premarital agreement. The wife objected to Kim's testimony about her conversation with the husband concerning the premarital agreement. The wife also asserted that Kim only had an inadmissible *copy* of the premarital agreement as opposed to the original document. The trial court overruled the wife's objections and admitted the testimony and agreement into evidence.

Kim also testified that the wife told her that she had signed the agreement. Being familiar with both parties' signatures, she confirmed that she recognized both the husband's and the wife's signatures on the premarital agreement. The notary who notarized the wife's signature testified for the husband's estate. She explained that, based on the policies of her employer, she would not have notarized a document if it was incomplete or the signatory was not present. The notary did not think

- 4 -

the wife needed an interpreter during their meeting. She explained that she was fluent in Korean and recalled speaking with the wife in Korean.

Following Kim resting her case, the wife called Jin Hee Kim (hereinafter Jin Hee) to testify on her behalf about the premarital agreement. Kim objected because the wife failed to disclose this testimony in discovery. The trial court reviewed the discovery and concluded that the wife did not identify Jin Hee as an individual with knowledge about the premarital agreement and sustained Kim's objection to her testimony on that subject. However, the trial court permitted Jin Hee to testify about her immigration assistance to the wife, including interpretation services. Jin Hee also testified that she believed the marriage between the husband and the wife was "genuine."

The wife took the stand and testified that she had an elementary school education and spoke very little English. She explained that before her marriage, she had limited assets and "was on the brink of being deported." The husband told her that he would help her get her green card. But she testified that, when they married, she loved her husband and they were happy together.

The wife initially denied signing the premarital agreement or that the husband had ever asked her to sign one. After acknowledging her signature on the document, the wife admitted that she signed it but said that she saw only the last page. She explained she did not know what it was. She also testified that she did not have an interpreter to help her understand the document and that no one but the husband was present when she signed it. She denied asking Kim to destroy it.

After considering the evidence and the parties' arguments, the trial court found that there was no dispute that the husband and wife's signatures on the agreement were valid. The court found that the signatures were voluntary because the husband and wife signed the agreement seven weeks before the marriage, the parties shared a positive relationship, and there was no indication the husband pressured her to sign. The court noted that the wife had resources available to her, including a translator, to fully consider the agreement.

- 5 -

The trial court held that the wife failed to establish that the premarital agreement was signed involuntarily or that it was unconscionable. For these reasons, it enforced the premarital agreement and sustained the plea in bar.

ANALYSIS

I. Striking of the Jury Trial

The wife argues that the trial court erred when it "converted the scheduled jury trial" into a bench trial on the morning of the trial.[3]

The morning of the plea in bar hearing, Kim moved to strike the scheduled jury. The trial court was "perplex[ed]" by the motion because it was "unable to locate any pleading where any jury was requested." The wife's counsel stated that she requested a jury trial during a scheduling conference call and that the circuit court clerk agreed to it. But the trial court noted that it "can only speak through its orders and there [wa]s no order indicating that this matter [should] proceed to a jury." The case proceeded as a bench trial.

The right to a trial by jury "applies to pleas in bar" if a jury is "properly invoked." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019). A party may demand a jury trial in the complaint or by "serving upon other parties a demand . . . in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to the issue." Rule 3:21(b). "Absent leave of court for good cause shown, the failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury." Rule 3:21(d). As a question of law, an appellate court reviews de novo an interpretation of a Rule of Court. *N. Va. Real Est., Inc. v. Martins*, 283 Va. 86, 102-03 (2012).

---

[3] In a separate assignment of error, the wife additionally contends that the trial court erred by granting the motion to strike the jury because it was a late filed motion. She cites no authority in support of this proposition, and therefore we do not consider it. Rule 5A:20(e) (requiring opening briefs to provide "principles of law and the authorities" "[w]ith respect to each assignment of error"); *see also Coward v. Wellmont Health Sys.*, 295 Va. 351, 367 (2018).

The wife did not request a jury trial in compliance with Rule 3:21. Based on the record, she made no request for a jury in her complaint or in any response to the plea in bar. She also did not serve a demand in writing on Kim and failed to file any demand with the trial court. Finally, as the trial court noted, there was no order entered reflecting any request or ordering of a jury. As a result, the court did not err in proceeding with a bench trial. *See Massenburg*, 298 Va. at 217.

## II. Motion for Continuance

The wife also contends that the court erred in denying her continuance request following the jury trial being struck because denying her a continuance was "prejudicial" to her.

After the wife made her motion to continue the case, the court explained that it was counsel's responsibility for the scheduling order for a jury trial to be entered, there was no such order, and both parties appeared ready to proceed.[4] Citing its discretion to control its dockets and noting that it would be difficult to hear argument on the plea in bar prior to the date set for the trial on the merits, the trial court denied the motion.

The trial court's "ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant," here, the wife. *Reaves v. Tucker*, 67 Va. App. 719, 733 (2017) (quoting *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007)). "The absence of one renders inconsequential the presence of the other." *Cooper v. Commonwealth*, 54 Va. App. 558, 565 (2009) (quoting *Bolden v. Commonwealth*, 49 Va. App. 285, 290 (2007), *aff'd*, 275 Va. 144 (2008)).

As to prejudice, the wife alleges only that a "[j]ury trial and bench trial are different animals" with "different tenors" and "different audiences." But prejudice "may not be presumed; it must appear from the record." *Id.* (quoting *Bolden*, 49 Va. App. at 290). The wife

---

[4] The trial court also made clear that it would accommodate the wife to make sure her witnesses could be there and that she could "present all the evidence that [she] want[ed] to present."

fails to articulate any actual prejudice that resulted from the denied continuance, so there is no basis to reverse the trial court's ruling. *See Reaves*, 67 Va. App. at 733.

### III. Admissibility of Evidence

The wife raises several challenges to the trial court's decisions to admit or exclude certain evidence.

It is fundamental that on appeal, a trial court's evidentiary decisions are reviewed for an abuse of discretion. *See, e.g.*, *Emerald Point, LLC v. Hawkins*, 294 Va. 544, 553 (2017); *Hargrove v. Commonwealth*, 77 Va. App. 482, 505 (2023). "A reviewing court can conclude that an abuse of discretion occurred only when reasonable jurists could not differ about the correct result." *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022). "This bell-shaped curve of reasonability" underpinning appellate review for an abuse of discretion "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that [it] does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (first alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

The wife argues that the trial court erred in admitting the premarital agreement into evidence because no foundation was laid and the document admitted was not the original or properly authenticated by Kim's testimony. She also contends that Kim's testimony regarding the husband's confirmation of the agreement violated the rule against hearsay and did not qualify as an exception under the Dead Man's Statute. We consider these challenges in turn.

A.  Premarital Agreement

The wife argues that Kim failed to lay a foundation that she "had any personal knowledge relating to the authenticity of the Agreement."

"Litigants are entitled 'to introduce all competent, material, and relevant evidence that tends to prove or disprove any material issue in the case, unless that evidence violates a specific rule of admissibility.'"  *Lorenz v. Parker*, 82 Va. App. 413, 423 (2024) (quoting *Barkley v. Wallace*, 267 Va. 369, 373 (2004)).  One "condition precedent" to admissibility is complying with the rule of authentication.  *See* Va. R. Evid. 2:901.  This requirement "is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims."  *Id.*  Here, Kim testified that she found a copy of the premarital agreement in the husband's office and read it to him.  In turn, he confirmed it was the correct document.  The wife acknowledged her signature on the premarital agreement, and it was notarized.  This evidence is "sufficient to support a finding that the thing in question is what its proponent claims."  *Id.*; *see also Ragland v. Commonwealth*, 16 Va. App. 913, 919 (1993) ("A document's authenticity may be established through the use of circumstantial evidence, where surrounding circumstances establish that the writing is genuine.").

To the extent that the wife argues the trial court erred in admitting a copy of the premarital agreement, we start with recognizing that an "original" writing is defined as "the writing itself or *any other writing intended to have the same effect by a person executing or issuing it*."  Va. R. Evid. 2:1001(2) (emphasis added).  The premarital agreement provides that "[t]he parties may execute any number of copies of this instrument, each of which shall be deemed an original and may be used for any purpose without production of any other executed

- 9 -

copy." Consequently, the copies executed by the husband and wife are deemed originals, and the trial court did not abuse its discretion by admitting the proffered agreement.[5]

## B. Kim's Testimony

The wife argues that the admission of Kim's testimony as an exception to the rule against hearsay violated Virginia's Dead Man's Statute under Code § 8.01-397 because she was an adverse party and her testimony was uncorroborated.

"Hearsay is not admissible except as provided by the[ Virginia] Rules [of Evidence], other Rules of the Supreme Court of Virginia, or by Virginia statutes or case law." Va. R. Evid. 2:802. There are a number of exceptions to the general rule. One such exception to the rule against hearsay is derived from Code § 8.01-397, referred to as the Dead Man's Statute. *See* Va. R. Evid. 2:804(b)(5); *Bon Secours-DePaul Med. Ctr., Inc. v. Rogakos-Russell*, ___ Va. ___, ___ (Jan. 2, 2025).

Under this evidentiary principle, the hearsay declaration of a deceased person may be admissible at trial. *See Shumate v. Mitchell*, 296 Va. 532, 546 (2018). This broad rule "permits the introduction of hearsay testimony on behalf of the deceased . . . party," but if the testifying witness is an adverse or interested party, certain conditions must be met. *Bon Secours-DePaul Med. Ctr., Inc.*, ___ Va. at ___. If such testimony "presents an essential element that, if not corroborated, would be fatal to the adverse party's case[,]" the testimony must be corroborated.

---

[5] This Court decides issues on the best and narrowest grounds. *See Commonwealth v. White*, 293 Va. 411, 419 (2017). We simply note that although typically only an original document is admissible evidence, a copy may be admitted if the original has been lost or destroyed. Va. Rs. Evid. 2:1001(1), 2:1002, 2:1004(a). "The test of unavailability is proof with reasonable certainty." *Dalton v. Commonwealth*, 64 Va. App. 512, 524 (2015) (quoting *Bradshaw v. Commonwealth*, 16 Va. App. 374, 380 (1993)). Here, Kim searched the marital home for the original premarital agreement to no avail, including the location suggested by the husband. The wife also told Kim that she, too, did not have the original. The trial court had this evidence before it. *See id.* at 524-25 (finding that testimony from a witness about his inability to produce text messages because he no longer owned the phone was sufficient to satisfy Virginia Rule of Evidence 2:1004).

*Id.* at ___ (quoting *Johnson v. Raviotta*, 264 Va. 27, 32 (2002)). On the other hand, "[i]f the witness is neither 'adverse' nor 'interested,' the corroboration requirement does not apply." *Id.* at ___.

The trial court concluded that Kim was *not* an adverse party because she had no pecuniary interest in the outcome and was only a party due to her status as executor of the husband's estate. "An adverse party, within the meaning of [the Dead Man's Statute], is one who is a party to the record, against whom or in whose favor a judgment is sought. An interested party is one, not a party to the record, who is pecuniarily interested in the result[s]." *Id.* at ___ (first alteration in original) (quoting *Merchs.' Supply Co. v. Hughes' Ex'rs*, 139 Va. 212, 216 (1924)). This precedent suggests that if Kim was a party to the suit, her testimony regarding the authenticity of the agreement required corroboration. But, even if the trial court erred in finding Kim was not adverse, we conclude that the record contains sufficient corroboration, and as such, we hold that her testimony was admissible. "Corroboration may, and often must, be shown through circumstantial evidence, but each point need not be corroborated nor must the corroboration rise to the level of confirmation as long as the corroboration strengthens the testimony provided by the surviving witness." *Keith v. Lulofs*, 283 Va. 768, 776 (2012). "Moreover, 'evidence, to be corroborative, must be independent of the surviving witness. It must not depend upon his credibility or upon circumstances under his control. It may come from any other competent witness or legal source, but it must not emanate from him.'" *Jones v. Williams*, 280 Va. 635, 639 (2010) (quoting *Va. Home for Boys & Girls v. Phillips*, 279 Va. 279, 286 (2010)).

Here, the wife confirmed her signature on the premarital agreement. In addition, the notary testified that she personally notarized the agreement, and she would not have done so if it was an incomplete document or if the wife was not present. This independent evidence in the

record corroborates Kim's testimony regarding the authenticity of the premarital agreement as required by Code § 8.01-397. As a result, the record supports the trial court's finding that Kim's testimony was admissible. *See* Va. R. Evid. 2:804(b)(5).

## C. Jin Hee's Testimony

The wife contends that the trial court erred by excluding Jin Hee's testimony concerning the premarital agreement on the basis that it was not properly disclosed in response to Kim's interrogatories.

Rule 4:12(b)(2) empowers a trial court to "sanction a party that 'fails to obey an order to provide or permit discovery.'" *Galloway v. County of Northampton*, 299 Va. 558, 563 (2021). One available sanction "is to prohibit an offending party 'from introducing designated matters in evidence,' including by preventing the party's witness from testifying." *Id.* (quoting Rule 4:12(b)(2)(B)).

At trial, the wife wanted Jin Hee to testify "that she has never heard about a premarital agreement being mentioned by [the husband] nor [the wife] during the time when she was serving as the interpreter." The trial court excluded that testimony, holding that the wife failed to meet her discovery obligations. The wife argues that the interrogatories requested "information as to witnesses who had information about [the wife] signing the premarital agreement." Based on her claim that she did not sign the "five-page document purporting to be a premarital agreement," the wife contends there would be no witness for her to identify.

Even assuming the trial court erred in excluding Jin Hee's testimony about the premarital agreement, any such error was harmless. *See generally Bon Secours-DePaul Med. Ctr.*, ___ Va. at ___ (holding a court may assume without deciding on a point to resolve an appeal on the best-and-narrowest ground). "[H]armless-error review [is] required in *all* cases." *Moore v. Joe*, 76 Va. App. 509, 516 (2023) (second alteration in original) (quoting *Spruill v. Garcia*, 298 Va. 120,

- 12 -

127 (2019)). "When it plainly appears from the record and the evidence . . . that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." *Lehmann v. WFV Holdings, LLC*, 80 Va. App. 802, 819 (2024) (quoting *Moore*, 76 Va. App. at 516-17 (alteration in original)). As such, "[a]ny error that does not implicate the trial court's subject matter jurisdiction is subject to harmless-error analysis." *Spruill*, 298 Va. at 127. For evidentiary issues, "[a]n error is harmless if 'the error did not influence the [factfinder], or had but slight effect.'" *Davenport v. Util. Trailer Mfg. Co.*, 74 Va. App. 181, 213 (2022) (second alteration in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 201 (2015) (per curiam)).

Despite having at least seven weeks to do so, the wife did not review the premarital agreement with Jin Hee, who provided interpretation services for her. The wife acknowledged her signature on the agreement, and the notary made clear she would not have notarized it unless the wife was present and the document was complete. The notary, who communicated with the wife in fluent Korean, rendered unnecessary the wife's need for an interpreter while signing the premarital agreement. In addition, the trial court's finding did not depend on whether the wife used an interpreter to ensure she understood every term before she signed. The court instead relied on the fact that the wife had adequate *opportunity* over seven weeks to use such services if she desired. Jin Hee's testimony that the wife failed to use her services would not have altered the trial court's conclusions regarding whether the wife had sufficient time and opportunity to understand the agreement she signed. Because the testimony would not have impacted the trial court's reasoning or the outcome of this case, any error in excluding Jin Hee's testimony was harmless.

IV. Enforceability of the Premarital Agreement

The wife argues that the trial court erred by granting the plea in bar based on its ruling that the premarital agreement was valid and enforceable.

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg*, 298 Va. at 216 (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). "The party asserting the plea in bar bears the burden of proof." *Id.* "[I]f evidence is presented ore tenus, the [trial] court's factual findings 'are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support.'" *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Massenburg*, 298 Va. at 216). An appellate court reviews de novo the trial court's "application of the law to the facts." *Ferguson v. Stokes*, 287 Va. 446, 450 (2014).

"[T]he person against whom enforcement [of the agreement] is sought [must] prove[]" the necessary elements to successfully show a premarital agreement is not valid. Code § 20-151(A); *see also Sims v. Sims*, 55 Va. App. 340, 349 (2009) (discussing that the wife "had the burden at trial to prove by clear and convincing evidence the grounds alleged to void or rescind the agreement" (quoting *Drewry v. Drewry*, 8 Va. App. 460, 463 (1989))). Here, that person is the wife. To succeed in proving the agreement was not valid, she needed to prove that the agreement was not executed voluntarily. Code § 20-151(A)(1). Or she needed to show that if "[t]he agreement was unconscionable when it was executed," that she did not receive "a fair and reasonable disclosure of the property or financial obligations of the other party" and also did not "voluntarily and expressly waive, in writing, any right" to that disclosure. Code § 20-151(A)(2).

First, this Court finds that the record supports the trial court's determination that the wife failed to establish involuntariness under Code § 20-151(A)(1). *See Rogers v. Yourshaw*, 18 Va. App. 816, 823 (1994) (noting that voluntariness is a question of fact). The wife admitted that

her signature appeared on the agreement. The document was notarized, and the trial court heard evidence that the notary would not have affixed her seal had the signatory not been present or the document was incomplete. The husband presented the premarital agreement to the wife at least seven weeks before the marriage, giving her ample time to consider its provisions. During that time, the wife had access to translators who could assist her with documents. The court also noted that "[t]here was no evidence that [the husband] forced her to sign [the agreement] or put any pressure on her to sign on the day" it was presented. Based on these facts, the trial court did not abuse its discretion by finding that the agreement was entered into voluntarily. *See Galloway v. Galloway*, 47 Va. App. 83, 93 (2005) (stating that the wife "signed the agreement" and there was no "indicat[ion] she was under duress or that [the] husband exercised any undue influence for her to sign").

Second, the record also supports the trial court's finding that the wife failed to prove that the premarital agreement was unconscionable under Code § 20-151(A)(2). "Any issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law." Code § 20-151(B). So, on appeal, questions of unconscionability are reviewed de novo. Still, "the underlying facts must be determined by the fact finder, and on appeal we determine whether there is sufficient evidence to support the factual findings." *Galloway*, 47 Va. App. at 92. "If there is credible evidence in the record supporting the factual findings made by the trier of fact, we are bound by those findings regardless of whether there is evidence that may support a contrary finding." *Sims*, 55 Va. App. at 348 (quoting *Galloway*, 47 Va. App. at 92).

When evaluating the enforceability of a premarital agreement, courts apply a "two-step test . . . in determining whether an agreement is unconscionable." *Chaplain v. Chaplain*, 54 Va. App. 762, 773 n.4 (2009). The court must evaluate whether the party seeking to show the agreement is unenforceable has proven: "1) a gross disparity existed in the division of assets and 2) overreaching

or oppressive influences." *Id.* (quoting *Galloway*, 47 Va. App. at 92). The trial court acknowledged the gross disparity of assets.[6] But it found that the wife failed to present "clear and convincing evidence" of the second prong of the test, mainly that the husband applied overreaching or oppressive influences to coerce her into entering the agreement. *See Galloway*, 47 Va. App. at 95. Although the wife was facing deportation when she married her husband, she testified that they married for love and were happy together. There was no evidence that the husband had control over the wife's deportation had she refused to sign the agreement. Moreover, as already noted, the wife had seven weeks to consider whether she wanted to be bound by the agreement. Further, there was no evidence that the wife was forced to sign the agreement the day it was presented to her. *See id.* at 92-95 (finding that an agreement was enforceable even though the husband received "94% of the marital assets," but "there was no evidence of overreaching or oppressive behavior by [the] husband"). Based on this evidence, we conclude, as the trial court did, that the wife failed to show overreaching or oppressive behavior by her husband that rendered the agreement unconscionable.[7]

For these reasons, the court did not err in finding the agreement enforceable.

CONCLUSION

The wife did not properly request a jury trial, and the trial court did not abuse its discretion in denying her motion for a continuance. Further, the court did not abuse its discretion by admitting the premarital agreement because there was sufficient evidence supporting its

---

[6] It did, however, find that the husband ameliorated their economic disparity by providing for his wife. Before his death, the husband added the wife to the deed of his residence and the title of a vehicle, and she became the sole owner of that property when he died. She sold the residence for approximately $700,000 following the husband's death. The wife also was the beneficiary designation of the husband's IRA account, from which she continued to receive $1,600 monthly.

[7] The premarital agreement provided that "[e]ach party hereby voluntarily and expressly waives any and all rights to any further disclosure of the property, assets and liabilities of the other party." This provision of the agreement supports the conclusion that the wife waived husband's financial disclosure. *See* Code § 20-151(B) (stating the "[r]ecitations in the agreement shall create a prima facie presumption that they are factually correct").

authenticity, and there was sufficient evidence to show that a copy was to be treated as an original. Also, any hearsay in Kim's testimony with regard to the agreement was corroborated for purposes of the Dead Man's Statute. And any error in excluding the testimony of Jin Hee was harmless. Finally, the wife failed to prove that she involuntarily entered into the premarital agreement or that it was unconscionable. For these reasons, the trial court's judgment is affirmed.

*Affirmed.*